Gaston, J.
 

 Henry Shore, formerly of Stokes county, died in 1819, having by his last will and testament, whereof he appointed the defendants, Henry Shore and John Christian Lehman, executors, directed his household furniture to be sold and the proceeds to be equally distributed among his five children, ,of whom Mary Barbara, the wife of Simon Peter Hauser, was one, and, in regard to her share, he directed that it should remain in the hands of his executors in trust for the children of the said Mary Barbara, the interest yearly for her use to be paid to her by the executors. He further directed, after the deduction of certain legacies, that his remaining property, consisting of bonds, book accounts,
 
 *597
 
 notes and cash on hand and money received by the sale of his household property, be divided in the same manner and that the share of his daughter Mary Barbara be managed as before directed. He further declared his will to be as follows:
 
 “
 
 It is my will that out of 1000 acres of land, which I am possessed of on Obion river, State of Tennessee, my son Henry Shore and my son John Christian Lehman, (the executors aforesaid) for their trouble by attending on me in tny old age, shall each of them have 150 acres extra, and the remaining 700 acres to be sold by my executors, and the moneys arising from said sale to be equally divided among my 'five children, (naming them) the share of the last mentioned (Mary Barbara) to be managed as directed in the 3d section, to remain with my executors in trust for the children of my daughter, Mary Barbara, and the interest of her share shall be paid annually by my executors to her, and for her own use, during her natural life. The executors proved the will, made sale of the household furniture, and sold the tract of land on Obion river to one Jacob Conrad, and this bill was filed by the said Simon Peter Hauser and Mary Barbara his wife and then-children, against the executors and the said' Conrad, in order to have an account from and decree against the executors, because of the share of the proceeds of the sale of the furniture of the testator, and of his money, bonds, notes and open accounts, wherein they are inte-ested as aforesaid, and also a decree against the executors and Conrad also, because of their share in the price of the Tennessee Tract of land. Conrad, since the filing of the bill, has died, and the suit having abated as to him, has been since carried on against the executors only. Accounts have been taken in the course of the cause in regard to the receipts, disbursements and payments of the respective executors, and no exception having been taken on either side to the Master’s report, in relation thereto, the same will stand confirmed. One question is left for the consideration of the court. It appears upon the pleadings, proofs and Master’s report, that the executors sold to Conrad the whole of the Obion tract of land for the sum of $>2,000, payable .the .lst.o.f .January, 1822, and that
 
 *598
 
 the sum of $> 1,400, being the part of the price which was directed to be divided between the children of the testator, has been received by the defendant Shore exclusively. As _ _ t
 
 J
 
 to
 
 his
 
 liability ior the shore of that money claimed by the plaintiffs, there is no dispute; but it is contended on the part of the defendant, Lehman, that
 
 he,
 
 Lehman, is in no respect responsible to the plaintiff, on account thereof. The material facts in relation to this transaction are, that the sale of the tract was made by the defendants jointly, and that, after having secured the payment from Conrad for the price of the 300 acres specially devised to them, they took his covenant for the remaining part of the price of $1,400, and executed to him a conveyance in fee simple. In this covenant it was expressly stipulated,.that all debts that might be due from‘the said Shore and Lehman, or from either of them, unto the said Conrad, should be deducted from, and be allowed as payments on account of the said land. From day >to day, and as Shore’s pressing personal necessities called for help, Conrad supplied him with goods and occasienal sums •of money, until by the 17th of August, 1821, the amount of such supplies equalled the amount to be paid by the covenant, and on the 2d of January, 1832, a settlement was had between Conrad and Shore in the presence of Lehman, and Conrad’s covenant surrendered as extinguished. When this was done, Shore was in very embarrassed circumstances, and he is now believed to be insolvent. Upon these facts it is impossible to doubt the liability of Lehman for the waste of these funds. By the terms of the sale, in which he concurred, he enabled and tempted his co-executor and co-trustee to commit this act of malversation. He must be answerable therefor, as much as he would have been for the misapplication by a stranger, whom he might have authorised to receive the money of his
 
 cestui que trusts,
 
 and should he need it, to apply it to his own use.
 

 Per Curjam. Decree accordingly.